BROWN, NERI, SMITH & KHAN, LLP
Nathan M. Smith (SBN 255212)
Nona Yegazarian (SBN 316458)
11601 Wilshire Blvd, Suite 2080
Los Angeles, California 90025
Tel.: (310) 593-9890
Fax: (310) 593-9980
nate@bnsklaw.com
nona@bnsklaw.com

Additional co-counsel identified
on the signature page

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MICHAEL YOUNG and DAN DOLAR**, individually and on behalf of other similarly situated individuals, | Case No.  8:19-cv-00827-JVS-DFM |
| Plaintiffs, | **CLASS ACTION** |
| v. | **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| **MOPHIE, INC.**, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Michael Young, a Florida resident ("Mr. Young"), and Dan Dolar, a California resident ("Mr. Dolar") (collectively "Plaintiffs"), on behalf of themselves and other similarly situated individuals, allege the following against Defendant Mophie, Inc., ("Mophie" or "Defendant"), upon personal knowledge as to themselves and their own acts and upon information and belief – based upon, *inter alia*, the investigation made by their attorneys – as to all other matters, as follows:

**INTRODUCTION**

1.      In recent years consumers have become increasingly dependent on portable electronic devices like smart phones, tablets and laptop computers ("PED").  PEDs have made it convenient for consumers to stay in constant communication with colleagues, friends, and loved ones, and to immediately access information.  However, like any electronic device, PEDs require power and their internal batteries must be periodically recharged.

2.      To address the needs of consumers to use PEDs during travel, or when the consumer otherwise lacks access to an electrical outlet, the portable charger industry emerged.  A portable charger, often called a power bank ("Power Bank"), is a small, portable power source consumers can use to recharge their PEDs during travel.  A power bank with a higher capacity, as is expressed in milliampere-hours ("mAh"), has a greater ability to recharge PEDs compared to a power bank with a lower capacity.  The primary value and main differentiator is the power bank's capacity as compared to other power banks. Thus, consumers prefer and are willing to pay a premium for power banks with higher mAh ratings.

3.      Mophie manufactures, markets, and distributes for sale to consumers nationwide a number of Power Banks under the Powerstation and Juice Pack labels (the "Products").   It represents the Products' capacities as measured in mAh on the products' packaging.

4.      Unfortunately for consumers, testing has shown the Products' actual capacity is substantially lower than what Mophie represents.

5.      By deceiving consumers about the Products' capacity as detailed herein, Mophie is able to sell more of, and charge more for, the Products, than it could if they were labeled accurately.  Further, Mophie was also motivated to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

6.      This is a proposed class action brought by Plaintiffs, individually and on behalf of a class of similarly situated consumers, against Mophie, seeking redress for Defendant's unlawful, unjust, unfair, and deceptive practices in misrepresenting the capacity of the Products in violation of state law during the applicable statute of limitations period ("Class Period").

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over the parties in this case.  Defendant is headquartered and has its principal place of business in this District.

8.      This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class is comprised of at least 100 members, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

9.      Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the Power Banks, occurred within this District.

## PARTIES

10.     Plaintiff Michael Young is an individual consumer who, at all times material hereto, was a citizen and resident of Pensacola, Florida.  In early 2018, Mr. Young purchased the Juice Pack compatible with his Samsung Galaxy Note8 phone from a Best Buy store.

11.     Mr. Young read and relied upon the rated mAh of power Defendant asserted the Power Bank provided.

12.     Upon receiving the Power Bank, Mr. Young was disappointed to find he was forced to recharge his Mophie more often than he expected.

13.     Mr. Young needs to keep his phone charged and available for his work, and sometimes does not have access to an electrical outlet.  Mr. Young has a substantial need for a Power Bank.  Mr. Young would consider purchasing the Power Bank again if he could trust that the Defendant's representations about its mAh rating were correct going forward, such as if the Power Bank was redesigned to make the Defendant's representations about it correct, or if the

Power Banks label and advertising depicted the Power Banks' mAh and it was priced accordingly. He also has a strong interest in ensuring honesty in the marketplace for Power Banks.

14.    Plaintiff Dan Dolar is an individual consumer who, at all times material hereto, was a citizen and resident of Manteca, California.   In 2017, Mr. Dolar purchased a Juice Pack compatible with his Pixel XL phone.

15.    Mr. Dolar is a computer technician, who reads and is familiar with technical specifications.   He read and relied upon the rated 2,950 mAh of power Defendant asserted the Product provided.  He was impressed with that Product appeared to provide this capacity in a small package.

16.    Upon receiving the Product, Mr. Dolar was disappointed, finding that it did not keep his phone charged for as long as he expected.

17.    Mr. Dolar needs to keep his phone charged and available for his work, and sometimes does not have access to an electrical outlet.  Mr. Dolar has a substantial need for a Power Bank.  Mr. Dolar would consider purchasing the Product again if he could trust that the Defendant's representations about its mAh rating were correct going forward, such as if the Product was redesigned to make the Defendant's representations about it correct.  He also has a strong interest in ensuring honesty in the marketplace for Power Banks.

18.    Defendant Mophie is a California corporation with its principal place of business at 15101 Red Hill Ave., Tustin, California.  Defendant owns the Powerstation and Juice Pack brands.  Defendant markets and distributes the Power Banks from California throughout the United States.

## DETAILED ALLEGATIONS

19.    Millions of Americans depend on portable electronic devices like smart phones, tablets, and laptop computers ("PED") to conduct their daily lives.  PEDs have made it more convenient for consumers to constantly stay in communication with colleagues, friends, and loved ones, and to immediately access information.

20.     To address the needs of consumers to power their PEDs during travel, or when they otherwise lack access to an electrical outlet, an industry for Power Banks has emerged.  The sale of Power Banks now generates more than $15 billion in sales each year.

21.     The most important factor for consumers in choosing a Power Bank is its capacity, which is measured in milliampere-hours, or "mAh."  The higher the mAh, the greater the ability to recharge PEDs before the Power Bank itself must be recharged.  Consumers thus have a strong preference for, and pay more for, Power Banks with a higher mAh.  Accordingly, for most Power Banks, the mAh rating is featured prominently in the power bank's advertising.

22.     Defendant Mophie manufactures, markets, and distributes for sale nationwide to consumers a number of Power Banks under the Powerstation and Juice Pack label ("the Power Banks") from its principle place of business in California.  Defendant sells the Power Banks directly from its website, through Amazon.com, and through other retailers.  Everywhere the Power Banks are sold, at the point of sale on the Power Banks' packaging and labeling, Defendant prominently represents the Power Banks' capacity as measured in mAh.

23.     Unfortunately, testing has shown that Defendant has systematically and routinely substantially inflated the Products' mAh ratings.  Testing conducted on over a dozen of the Products revealed shortfalls across Defendant's product line.  Upon information and belief, Defendant knew, at the time it sold the Products to Plaintiffs and the other class members, that the Products' true capacity was substantially less than what Defendant had represented.  Defendant intentionally misrepresented the Products' capacity to Plaintiffs and the other class members to induce them to purchase and pay a premium for the Products.

24.     In very basic terms, the Products consist of a battery (or series of batteries) and technology which converts the charge from the batteries to a voltage that consumer devices, like cell phones, can accept.  By necessity, the conversion process reduces the amount of available power.  Power Banks also have internal circuitry that must use power from the internal batteries.

25.     Defendant's marketing of the Power Banks' mAh capacity misleadingly fails to account for the fact that the Products are technologically incapable of delivering the full amount of power for which the internal batteries are rated.  The Products can never deliver the amount of

power held by the internal batteries to a consumer's device because, before it can be delivered, its voltage must be converted, resulting in a loss of up to one-quarter of the batteries' theoretical power, and the internal circuitry must be powered. Because this power can never be delivered to a consumer's device, it is deceptive to base marketing statements on a theoretical battery capacity that Products are incapable of actually delivering.

26. Mr. Young purchased a Mophie Juice Pack Power Bank that Defendant asserted had a "2950 mAh" capacity. For the reasons described in ¶ 25, it was impossible for Mr. Young's device to actually deliver that much power.

27. Mr. Dolar purchased a Mophie Juice Pack Power Bank that Defendant asserted had a "2950 mAh" capacity. For the reasons described in ¶ 25, it was impossible for Mr. Dolar's device to actually deliver that much power.

28. Defendant has profited enormously from its false and misleading representations about the Products. The purpose of this action is to put an end to Defendant's deceptive marketing of the Products and to provide consumers with monetary relief.

## CLASS ALLEGATIONS

29. Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs brings this action on behalf of themselves and all other similarly situated individuals within the United States (the "Nationwide Class"), defined as follows:

> All consumers who purchased the Products within the United States. Excluded from the Class is anyone who received a refund, as well as any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

30. Additionally, Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and similarly situated individuals within certain States (the "Multi-State Class"), defined as follows:

> All consumers who purchased the Power Banks in Alaska, California, Connecticut, Delaware, the District of Colombia, Illinois, New Hampshire, New York, Wisconsin, Florida, Hawaii, Massachusetts, Nebraska, Washington, Missouri, Maine, Michigan,

New Jersey, Vermont and Rhode Island. Excluded from the Class are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

31.    Additionally, Plaintiff Dan Dolar (the "California Plaintiff") brings this class action on behalf of himself and similarly situated individuals within California (the "California Class"), defined as follows:

All California residents who purchased the Products within California from four years prior to the date of this filing through the date the Court certifies the Class. Excluded from the Class is anyone who received a refund as well as any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

32.    Additionally, Plaintiff Michael Young (the "Florida Plaintiff") brings this class action on behalf of himself and similarly situated individuals within Florida (the "Florida Class"), defined as follows:

All Florida residents who purchased the Products within Florida from four years prior to the date of this filing through the date the Court certifies the Class. Excluded from the Class is anyone who received a refund as well as any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

The Nationwide Class, Multi-State Class, California Class, and Florida Class are referred to collectively as the "Classes."

33.    At this time, Plaintiffs do not know the exact number of members of the Classes; however, based on Defendant's sales, market research, and publicly available information Plaintiffs believe that the number of members of each of the Classes are so numerous that joinder of all members is impractical.

34.    Questions of law and fact common to the members of the Classes that predominate

FIRST AMENDED COMPLAINT

over questions that may affect individual Class members include:

    (a) whether Defendant misrepresented the Power Banks' mAh ratings;

    (b) whether Defendant's conduct was unfair and/or deceptive;

    (c) whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Classes;

    (d) whether Defendant's conduct constitutes a breach of express warranty;

    (e) whether Defendant violated state consumer protection laws;

    (f) whether Plaintiffs and the Classes have sustained damages and, if so, the proper measure thereof;

    (g) whether Plaintiffs and the Classes are entitled to restitution, and if so, the proper measure thereof; and

    (h) whether Defendant should be enjoined from continuing to sell the Power Banks as currently labeled;

    35.    Plaintiffs' claims are typical of those of the Classes, because Plaintiffs, like all members of the Classes, purchased, in a typical consumer setting, Defendant's Power Bank bearing the claim that its capacity is greater than it really is, and Plaintiffs sustained damages from Defendant's wrongful conduct.

    36.    Plaintiffs will fairly and adequately protect the interests of the Classes, and have retained counsel that is experienced in litigating complex consumer products class actions. Plaintiffs have no interests which conflict with those of the Classes.

    37.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

    38.    No member of the Classes has a substantial interest in individually controlling the prosecution of a separate action.  The damages for each individual member of the Classes likely will be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct.  Thus, it would be virtually impossible

for them individually to effectively redress the wrongs done to them.

39.   The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the members of the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

40.   The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the members of the Classes even where certain members of the Classes are not parties to such actions.

41.   Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes.  As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole is appropriate.

### CAUSES OF ACTION
### COUNT I
**(Unfair and Deceptive Acts and Practices in Violation of
the California Consumers Legal Remedies Act, on Behalf of the
Nationwide Class or in the Alternative on Behalf of the California Class)**

42.   Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

43.   This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

44.   Plaintiffs and the other members of the Class(es) are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

45.   Plaintiffs, the other members of the Class(es), and Defendant have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

46.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

47.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiffs and the other members of the Class that the Products' capacity is greater than it actually is.

48.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

49.     Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiffs seek an order of this Court that includes, but is not limited to, an order requiring Defendant to remove and/or refrain from making representations that the Products' capacity is greater than it actually is.

50.     Plaintiffs and the other class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

51.     The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiffs and the other members of the Class(es).

52.     CLRA § 1782 NOTICE.  On  March 21, 2019, a CLRA demand letter was sent to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  The letter also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed.  Defendant has failed to comply with the letter.  Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiffs, on behalf of themselves and all other members of the Class(es), seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

**COUNT II**
**(Violations of California's False Advertising Law, on Behalf of**
**the Nationwide Class or in the alternative on Behalf of the California Class)**

53.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

54.     As alleged more fully above, Defendant has falsely advertised the Products by falsely claiming that the Products' capacity is greater than it really is.

55.     At all material times, Defendant engaged in a scheme of offering the Products for sale to Plaintiffs and the other members of the Class(es) by way of distributing within the State of

California to the public, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), the Products' packaging and labeling, and other promotional materials and offered for sale of the Products on a nationwide basis, including in California.

56.     The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising, and therefore constitute a violation of the False Advertising Law ("FAL") Cal. Bus. & Prof. Code § 17500, *et seq*.

57.     Said advertisements and inducements were made within the State of California and come within the definition of advertising contained in the FAL in that such promotional materials were intended as inducements to purchase the Products and are statements disseminated by Defendant to Plaintiffs and the other class members that were intended to reach Plaintiffs and the other class members.  Defendant knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive.

58.     The above acts of Defendant did and were likely to deceive reasonable consumers, including Plaintiffs and the other members of the Class(es), by misrepresenting the capacity of the Products, in violation of the "false" and "misleading" prongs of the FAL.

59.     Plaintiffs and the other members of the Class(es) have suffered injury in fact and have lost money or property as a result of Defendant's violations of Cal. Bus. & Prof. Code § 17500 *et seq.*

60.     Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiffs and the Class(es) seek an order of this Court that includes, but is not limited to, an order requiring Defendant to remove and/or refrain from making representations on the Products' packaging and in its advertising that the Products' capacity is greater than it really is.

## COUNT III
**(Violation of California's Unfair Competition Law, on Behalf of
the Nationwide Class or in the alternative on Behalf of the California Class)**

61.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

62.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class(es) as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

63.     Defendant has violated the UCL's proscription against engaging in *unlawful* conduct as a result of:

> (a) its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as alleged above; and
>
> (b) its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged above.

64.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

65.     As more fully described above, Defendant's false and misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers. Indeed, Plaintiffs and the other members of the Class(es) were unquestionably deceived regarding the capacity of the Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresent and/or omit the true facts concerning the benefits of the Products.  Said acts are fraudulent business practices.

66.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

67.     Plaintiffs and the other class members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

68.     There is no benefit to consumers or competition from the deceptive marketing and labeling of the Products, which Defendant misrepresents as having a greater capacity than they actually do.

69.     Plaintiffs and the other class members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

70.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the Class(es).

71.     Defendant's violations of the UCL continue to this day.

72.     Pursuant to California Business and Professions Code § 17203, Plaintiffs and the Class(es) seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

(a) remove and/or refrain from making representations that the Products' capacity is greater than it really is;

(b) provide restitution to Plaintiffs and the other class members;

(c) disgorge all revenues obtained as a result of violations of the UCL; and

(d) pay Plaintiff's and the Class' attorney fees and costs.

**COUNT IV**
**(Violation of the Florida Deceptive and Unfair Trade**
**Practices Act, Fla. Stat. § 501.201 et seq., on Behalf of the**
**Nationwide Class or in the alternative on Behalf of the Florida Class)**

73.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

74.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Florida Class for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq. (the "FDUTPA").

75.     Section 501.204(1) of the FDUTPA makes "unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful.

76.     By labeling, advertising, marketing, distributing, and/or selling the Products with claims that the Products had a specific mAh capacity to Plaintiffs and the Florida Class members, Defendant violated the FDUTPA by engaging in, and it continues to violate the FDUPTA by continuing to engage in, unfair or deceptive acts or practices, by falsely and misleadingly describing the capacity of the Products, since the Products do not produce the advertised capacity.

77.     Had Plaintiffs and the Florida Class members known the Products were not, in fact, capable of producing the advertised capacity, they would not have purchased the Products and/or paid a premium price for the Products, as detailed herein.

78.     Plaintiffs and the Florida Class members were injured in fact and lost money as a result of Defendant's conduct.  Plaintiffs and the Florida Class members paid for Products with a specific mAh capacity but did not receive such Products.

79.     The Products Plaintiffs and the Florida Class members received were worth less than the Products for which they paid.

80.     Plaintiffs and the Florida Class members seek to enjoin such unlawful acts and practices described above.  Each of the Florida Class members will be irreparably harmed unless the unlawful actions of Defendant are enjoined in that they will continue to be unable to rely on Defendant's representations.

81.     Plaintiffs and the Florida Class members seek declaratory relief, injunctive relief prohibiting Defendant from continuing to disseminate its false and misleading statements, actual damages plus attorney's fees and court costs, and other relief allowable under the FDUTPA.

82.     Wherefore Plaintiffs, on behalf of the Class(es), pray for relief as set forth herein.

## COUNT V
### (Violation of Materially Identical State
### Consumer Protection Statutes, on Behalf of the Multi-State Class)

83.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

84.   Defendant is engaged in "trade" and "commerce" as it distributes the Power Banks to retail stores for sale to consumers within this and each of the states listed below.

85.   Defendant's representation regarding the capacity of the Power Banks were material to a reasonable consumer and likely to affect consumer decisions and conduct.

86.   Defendant has used and employed unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

87.   Defendant's acts and practices are immoral, unethical, oppressive and unscrupulous.

88.   Defendant's conduct is substantially injurious to consumers.  Such conduct has, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for the Power Banks but for Defendant's false promotion of the Power Bank's electrical storage capacity.  Consumers have thus overpaid for the Power Banks and such injury is not outweighed by any countervailing benefits to consumers or competition.

89.   No benefit to consumers or competition results from Defendant's conduct.  Since reasonable consumers are deceived by Defendant's representations of the Power Banks and they were injured as a result, consumers could not have reasonably avoided such injury. The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff and the Class to suffer an ascertainable loss when they paid a premium for the Power Banks.

90.   The practices discussed above all constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of at least the following state consumer protection statutes:[1]

(a) **Alaska Unfair Trade Practices and Consumer Protection Act**, Alaska Stat. § 45.50.471, *et seq*.;

(b) **California Unfair Competition Law,** Cal. Bus. & Prof. Code § 17200, *et seq*.;

(c) **Connecticut Unfair Trade Practices Act**, Conn. Gen. Stat. § 42-110a, *et seq*.;

(d) **Delaware Consumer Fraud Act**, Del. Code Ann. tit. 6, § 2511, *et seq*.;

---

[1] There is no material conflict between these state statutes because these state statutes (1) do not require reliance by unnamed class members; (2) do not require scienter; and (3) allow class actions.

(e) **District of Columbia Consumer Protection Procedures Act,** D.C. Code § 28-3901, *et seq.*;

(f) **Florida Deceptive and Unfair Trade Practices Act,** Fla. Stat. § 501.201, *et seq.*;

(g) **Hawaii Unfair and Deceptive Practices Act**, Hawaii Rev. Stat. § 480-1, *et seq.*;

(h) **Illinois Consumer Fraud and Deceptive Business Practices Act**, 815 Ill. Comp. Stat. § 505/1, *et seq.*;

(i) **Maine Unfair Trade Practices Act**, Me. Rev. Stat., tit. 5, § 205-A, *et seq.*;

(j) **Massachusetts Regulation of Business Practices for Consumers' Protection Act**, Mass. Gen. Laws Ann. ch. 93A, § 1 *et seq.*;

(k) **Michigan Consumer Protection Act,** Mich. Comp. Laws § 445.901 *et seq.*;

(l) **Missouri Merchandising Practices Act**, Mo. Rev. Stat. § 407.010, *et seq.*;

(m) **Nebraska Consumer Protection Act**, Neb. Rev. Stat. § 59-1601 *et seq.*;

(n) **New Hampshire Consumer Protection Act**, N.H. Rev. Stat. Ann. § 358-A:1. *Et seq.*;

(o) **New Jersey Consumer Fraud Act**, N.J. Stat. Ann. § 56:8-1, *et seq.*;

(p) **New York Deceptive Acts and Practices Act**, N.Y. Gen. Bus. Law § 349, *et seq.*;

(q) **Rhode Island Unfair Trade Practices and Consumer Protection Act**, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

(r) **Vermont Consumer Fraud Act**, Vt. Stat. Ann. tit. 9, § 2451, *et seq.*;

(s) **Washington Consumer Protection Act**, Wash. Rev. Code § 19.86.010, *et seq.*;

(t) **Wisconsin Deceptive Trade Practices Act**, Wis. Stat. § 100.18, *et seq.*

91.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiffs and the Class to suffer an ascertainable loss when they paid a premium for the Power Banks over comparable power banks.

92.    Plaintiffs and the Class are entitled to recover damages and other appropriate relief, as alleged below.

**COUNT VI**
**(Magnuson-Moss Warranty Act 15 U.S.C. § 2301, *et. seq.***
**On Behalf of the Classes)**

93.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

94.    Plaintiffs brings this count under the Magnuson-Moss Warranty Act ("MMWA") 15 U.S.C. § 2301, *et seq.*, on behalf of themselves and the Class(es).

95.    Plaintiffs and the members of the Class(es) are "consumers" within the meaning of MMWA, 15 U.S.C. § 2301(3).

96.    Defendant is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

97.    The Products are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

98.    The MMWA, 15 U.S.C. § 2301, *et seq.* provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

99.    In connection with the purchase of the Products, Defendant provided Plaintiffs and members of the Class(es) with one or more express warranties.

100.   Plaintiffs and the other members of the Class(es) read and relied on these representations in choosing to purchase the Products at the price that they paid.

101.   Defendant's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6).

102.   As alleged herein, Defendant breached these warranties.  Without limitation, the Products all share a common defect in that they have a capacity substantially below that represented by Defendant.

103.   At the time of sale of the Products Defendant knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Products' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defect.

104.   Because Defendant is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the members of the Class(es) have not re-accepted the Products by retaining them.

105.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

106.   By reason of the foregoing, Defendant is liable to Plaintiffs and the members of the Class(es) for damages they have suffered as a result of Defendant's actions, including diminution in the value of the Products, the amount of which will be determined at trial, as well as any other remedies afforded at law or in equity.

107.   Wherefore Plaintiffs, on behalf of the Class(es), pray for relief as set forth herein.

**COUNT VII**
**(Breach of Express**
**Warranty on Behalf of the Classes)**

108.   Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

109.   Defendant's representations regarding the Power Banks' capacity constitute affirmations of fact.

110.   Defendant's representations that the Power Banks' capacity is greater than it really is relates to the goods and became part of the basis of the bargain between Defendant and purchasers of the Power Banks.

111.   Plaintiffs and members of the Classes purchased the Power Banks, believing that they conformed to the express warranties.

112.   As set forth in the paragraphs above, Defendant's statements concerning the Power Banks are false.

113.   Defendant breached its express warranties about the Power Banks because, as alleged above, the Power Banks' capacity was lower than Defendant represented.  Defendant therefore breached the applicable state statutes and common law.

114.   As a result of Defendant's breaches of express warranty, Plaintiffs and the other members of the Classes were damaged in the amount of the purchase price they paid for the

Power Banks, or in the amount they paid based upon the misrepresentations, in amounts to be proven at trial.

115.   As a proximate result of the breach of warranties by Defendant, Plaintiffs and the other members of the Classes did not receive goods as warranted.  Among other things, Plaintiffs and members of the Classes did not receive the benefit of the bargain and have suffered other injuries as detailed above.  Moreover, had Plaintiffs and the members of the Classes known the true facts, they either would not have purchased the Power Banks, or would not have been willing to pay the price Defendant charged for the Power Banks.

116.   Wherefore Plaintiffs, on behalf of the Classes, pray for relief as set forth herein.

<u>**COUNT VIII**</u>
**(Unjust Enrichment on Behalf of
the Classes)**

117.   Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

118.   Plaintiffs and the members of the Classes conferred benefits on Defendant by purchasing the Power Banks and paying a greater price for them than they would have if the Defendant had truthfully represented the Power Banks' capacity.

119.   Defendant has knowledge of such benefits.

120.   Defendant's representations that the capacity of the Power Banks is greater than it actually is constitutes an affirmation of fact that is part of the basis of the bargain between Defendant and purchasers of the Power Banks.

121.   Defendant made the above-referenced representations in order to induce Plaintiffs and the members of the Classes to purchase, purchase more of, or to pay more for the Power Banks than they otherwise would have, and Plaintiffs and the members of the Classes relied on the representations in purchasing the Power Banks.

122.   As a result of Defendant's deceptive, fraudulent and misleading labeling, advertising, and marketing of the Power Banks, Plaintiffs and other members of the Classes were induced to pay the purchase price and pay more for the Power Banks than they otherwise would have.

123.   Plaintiffs and the members of the Classes were unjustly deprived of payments

because they would not have purchased, or would have purchased less of, or would have paid less for the Power Banks if true facts had been known.

124.   Defendant was enriched at the expense of Plaintiffs and the other members of the Classes, thereby creating a quasi-contractual obligation on Defendant to restore those ill-gotten gains to Plaintiffs and the members of the Classes.

125.   Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and the other members of the Classes, in light of the fact that the Power Banks purchased by Plaintiffs and the other members of the Classes were not what Defendant purported them to be.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the other members of the Classes for the monies paid to Defendant for the Power Banks.

126.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the members of the Classes are entitled to restitution or restitutionary disgorgement, in an amount to be proven at trial.

127.   Wherefore Plaintiffs, on behalf of the Classes, pray for relief as set forth herein.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the Classes as follows:

A.  An order certifying the proposed Classes; appointing Plaintiffs as the representatives of the Classes; and appointing Plaintiffs' undersigned counsel as Class counsel for the Classes;

B.  A declaration that Defendant is financially responsible for notifying members of the Classes of the pendency of this suit;

C.  An order requiring proper, complete, and accurate labeling of the Power Banks;

D.  Monetary damages, injunctive relief, and statutory damages in the maximum amount provided by law;

E.  Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

F.  An order awarding Plaintiffs and the other members of the Classes the reasonable costs and expenses of suit, including their attorneys' fees; and

G.  Any further relief that the Court may deem appropriate.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury for all claims so triable.

Dated: June 13, 2019

By: /s/ Nathan M. Smith
Nathan M. Smith
Nona Yegazarian
**BROWN NERI SMITH & KHAN LLP**
11601 Wilshire Blvd., Suite 2080
Los Angeles, CA 90025
T: (310) 593-9890
F: (310) 593-9980
nate@bnsklaw.com
nona@bnsklaw.com

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
D. Greg Blankinship*
445 Hamilton Ave, Suite 605
White Plains, New York 10601
(914) 298-3290
gblankinship@fbfglaw.com
sbonaiuto@fbfglaw.com

**BERGER MONTAGUE PC**
E. Michelle Drake*
Joseph C. Hashmall*
43 SE Main Street, Suite 505
Minneapolis, MN 55414
(612) 594-5999; (612) 584-4470
emdrake@bm.net
jhashmall@bm.net

*pro hac vice* forthcoming

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby declare under penalty of perjury as follows:  I am an attorney at the law firm of Brown, Neri, Smith & Khan, LLP, with offices at 11601 Wilshire Blvd., Suite 2080, Los Angeles, California 90025.

On June 13, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to any counsel of record or unrepresented parties.

Executed in Los Angeles, California on June 13, 2019.

/s/ Nona Yegazarian

PLF.'S NOT. OF PENDENCY
Case No. 8:19-cv-00827-JVS-DFM