Daniel M. Livingston, Bar No. 105981
Benjamin A. Nix, Bar No. 138258
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, CA 92614
(949) 851-1100
dml@paynefears.com
ban@paynefears.com

David W. Tufts, Bar No. 180817
Lyndon R. Bradshaw (*pro hac vice*)
DURHAM, JONES & PINEGAR, P.C.
111 So. Main, Suite 2400
Salt Lake City, Utah 84111
Tel: (801) 415-3000
dtufts@djplaw.com
lbradshaw@djplaw.com

Attorneys for Defendant Mophie Inc.

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL YOUNG and DAN DOLAR, individually and on behalf of other similarly situated individuals, | Case No. 8:19-cv-00827-JVS-DFM |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| Plaintiffs, | |
| v. | Hearing Date:  August 12, 2019 |
| | Time:  1:30 p.m. |
| MOPHIE INC., | Location:  Courtroom 10C, Santa Ana |
| | Judge:  Hon. James V. Selna |
| Defendant. | |

1

# **TABLE OF CONTENTS**

2   I.    INTRODUCTION ...................................................................... 1

3   II.   BACKGROUND FACTS ............................................................ 3

4   III.  LEGAL STANDARD ................................................................. 5

5   IV.   THE FAC SHOULD BE DISMISSED FOR LACK OF
          SUBJECT-MATTER JURISDICTION ......................................... 7

6
          A.    This Court Lacks Article III Jurisdiction Because Plaintiffs
7               Have No Cognizable Injury ............................................... 7

8         B.    This Court Lacks CAFA Jurisdiction Because There is No
                Allegation that the Class Size Exceeds 100 Members and the
9               Amount in Controversy is Far Less than $5 Million ..................... 11

10        C.    Plaintiffs' Allegations are Insufficient to Assert a Tenable Class
                Because the Class Representatives Have No Standing to Make
11              Claims under Multiple Other States Where They Do Not Reside
                and Suffered No
12              Injury……... ……………………………………………………13

13  V.    THE FAC FAILS TO STATE ACTIONABLE CLAIMS .......................... 16

14        A.    Counts I, II and III Fail to State a Claim under the CLRA, FAL
                and UCL .......................................................................... 16
15
          B.    Count IV Fails to State a Claim under the Florida Deceptive and
16              Unfair Trade Practices Act ................................................... 18

17        C.    Count V Fails to State a Claim under the State Consumer
                Protection Statutes ............................................................. 20
18
          D.    Count VI Fails to State a Claim under the Magnusson-Moss
19              Warranty Act .................................................................... 20

20        E.    Count VII Fails to State a Claim for Breach of Express Warranty .... 21

21        F.    Count VIII Fails to State a Claim for Unjust Enrichment ............... 22

22  VI.   PLAINTIFFS SHOULD BE DENIED THE RELIEF SOUGHT IN
          THE PRAYER FOR RELIEF .................................................... 24
23
24  VII.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED WITHOUT
          LEAVE TO AMEND .............................................................. 24

25  CONCLUSION ............................................................................... 25

26

27

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

# TABLE OF AUTHORITIES

## CASES

*Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) .................... 11

*Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010 (9th Cir. 2006) .................................................................................................... 7

*Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170 (M.D. Fla 2005) ........................................................ 23

*Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ...................................................................................... 11

*Angelo v. Parker*, ---So.3d---, 2019 WL 2528922 (Fla. Ct. App. June 20, 2019) ...................................................................................... 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 6, 9, 12

*Atik v. Welch Foods, Inc.*, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) ............................................................................................... 16

*Baltazar v. Apple, Inc.*, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) .................. 22

*Baptist Hosp., Inc. v. Baker*, 84 So.3d 1200 (Fla. Ct. App. 2012) ........................ 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................... 5, 9, 12

*Brockey v. Moore*, 107 Cal.App.4th 86 (2003) ................................................ 17

*Buonasera v. Honest Co., Inc.*, 208 F.Supp.3d 555 (S.D.N.Y. 2016) ............... 16, 23

*Carlson v. Gen. Motors Corp.*, 883 F.2d 287 (4th Cir. 1989) ................................ 9

*Checking Account Overdraft Antitrust Litig.*, 694 F.Supp.2d 1302 (S.D. Fla. 2010) .......................................................................................... 14

*Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ................................................................. 3, 21, 22

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................................ 15

*Cornelius v. Fidelity Nat'l Title Co.*, 2009 WL 596585 (W.D. Wash. Mar. 9, 2009) ........................................................................................ 14

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777 (N.Y. 2012) ................................ 23

*Doe v. Match.com*, 789 F. Supp. 2d 1197 (C.D. Cal. 2011) ................................ 15

*Dominguez v. UAL Corp.*, 666 F.3d 1359 (D.C. Cir. 2012) ................................ 10

*Dutta v. State Farm Mutual Auto. Ins. Co.*, 895 F.3d 1166 (9th Cir. 2018) .......................................................................................... 7, 20

PAYNE & FEARS LLP

ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

-iii-

*Ebner v. Fresh Inc.*, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013) ......................... 7

*Eike v. Allergan, Inc.*, 850 F.3d 315 (7th Cir. 2017) .................................... 9

*Espineli v. Toyota Motor Sales, U.S.A., Inc.*, 2019 WL 2249605 (E.D. Cal. May 24, 2019) ...................................................................... 6

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ...................................... 17

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006) .................................................... 10

*Gonzalez v. Costco Wholesale Corp.*, 2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018) ...................................................................... 15

*Grimm v. APN Inc.*, 2017 WL 6398148 (C.D. Cal. Aug. 31, 2017) ...................... 11

*Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................... 25

*Hawkins v. UGI Corp.*, 2016 WL 2595990 (C.D. Cal. May 4, 2016) ...................... 8

*Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009) ................... 24

*In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ...................................................................... 23

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ........................... 6

*In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011 (N.D. Cal 2007) ...................................................................... 14

*In re NJOY, Inc. Consumer Class Action Litig.*, 120 F.Supp.3d 1050 (C.D. Cal. 2015) ...................................................................... 13

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F.Supp.2d 1365 (S.D. Fla. 2001) ...................................................................... 14

*Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, (N.D. Cal. June 13, 2014) ...................................................................... 12

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .............................. 6

*Koronthaly v. L'Oreal USA, Inc.*, 374 F.App'x 257 (3d Cir. 2010) ..................... 9

*Lanovaz v. Twinings N.A., Inc.*, 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) ...................................................................... 13

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, 2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) .................................... 14, 23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................. 7

*MacDougall v. Am. Honda Motor Co.*, 2017 WL 8236359 (C.D. Cal. Dec. 4, 2017) ...................................................................... 21

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

-iv-

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)...........................15, 20

*McGuire v. BMW of N. Am., LLC,* 2014 WL 2566132 (D.N.J. June 6, 2014)........................................................................................................14

*McKinnis v. Kellogg USA*, 2007 WL 4766060 (C.D. Cal., May 21, 2007)........................................................................................................17

*Medley v. Johnson & Johnson*, 2011 WL 159674 (D.N.J. Jan. 18, 2011) .................9

*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) ...........................................11

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) .................................11

*Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142 (E.D.N.Y. 2015) ......................16

*Ocean Commc'ns, Inc. v. Burbeck*, 956 So.2d 1222 (Fla. Dist. Ct. App. 2007)........................................................................................................23

*Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642 (E.D. Mich. 2011)..............13, 22

*Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013) ...................17, 18

*Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) .................................................................................6

*Perez v. Monster Inc.*, 149 F. Supp. 3d 1176 (N.D. Cal. 2016) ............................21

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773 (Fla. 2003) ......................19

*Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ....................................................................22, 23

*Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975 (9th Cir. 2013) ............11, 12

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ............................5

*Skilstaf Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012)......................5

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ...................................................7

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)...........................6

*St. Clair v. City of Chico*, 880 F.2d 199 (9th Cir. 1989) .......................................5

*State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami*, 557 So.2d 107 (Fla. Ct. App. 1990).......................................................................22

*Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So.3d 207 (Fla. Ct. App. 2019).......................................................................................19

*Stotz v. Mophie Inc.*, 2017 WL 1106104 (C.D. Cal. Feb. 27, 2017) .......................11

*Sugawara v. Pepsico, Inc.*, 2009 WL 1439115 (E.D. Cal. May 21, 2009)........................................................................................................17

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

-v-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...................................... 6

*Tosco Corp v. Cmtys. for Better Env't*, 236 F.3d 495 (9th Cir. 2001) ...................... 11

*Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638 (C.D. Cal. 2014) ............................. 16

*Turner v. City & Cty. of S.F.*, 788 F.3d 1206 (9th Cir. 2015) .................................. 5

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006
    (9th Cir. 2013) ......................................................................................................... 5

*Videtto v. Kellogg USA*, 2009 WL 1439086 (E.D.Cal., May 21, 2009) ................... 17

*Werbel ex rel. v. Pepsico, Inc.*, 2010 WL 2673860 (N.D. Cal. July 2,
    2010) ...................................................................................................................... 17

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ................................ 17

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) ................................................... 5

*Workman v. Plum Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015) ............................. 24

*Young v. Johnson & Johnson*, 2012 WL 1372286 (D.N.J. Apr. 19,
    2012)

## **STATUTES**

10 Del. C. § 8106 ...................................................................................................... 20

15 U.S.C. § 2301(6)(A) ............................................................................................ 21

15 U.S.C. § 2310(d)(3) ............................................................................................. 20

28 U.S.C. § 1332(d) .................................................................................................... 2

28 U.S.C. § 1332(d)(5)(B) ....................................................................................... 13

5 Me. Rev. Stat. 213(1-A) ........................................................................................ 20

6 Del. C. § 2525 ....................................................................................................... 20

Alaska Stat. 45.50531 ............................................................................................... 20

Cal. B&P Code § 17200 ........................................................................................... 16

Cal. B&P Code § 17210 ........................................................................................... 16

Cal. B&P Code § 17500 ........................................................................................... 16

Cal. Civ. Code § 1770 .............................................................................................. 17

Cal. Civ. Code § 1770(a)(5) ..................................................................................... 16

Cal. Civ. Code § 1770(a)(7) ..................................................................................... 16

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

SLC_4362777

Cal. Civ. Code § 1770(a)(9) ....................................................................... 16

Conn. Gen. Ann. 42-110g(c) ...................................................................... 20

Fla. Stat. § 501.202(2) ............................................................................... 19

Fla. Stat. § 501.204(1) ............................................................................... 19

Fla. Stat. 95.11(f) ...................................................................................... 20

Hawaii Stat. 480-13.3 ................................................................................ 20

## **RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................... 5

Fed. R. Civ. P. 12(b)(6) ........................................................................... 2, 5

Fed. R. Civ. P. 12(f) ............................................................................. 6, 24

Fed. R. Civ. P. 12(h)(3) .............................................................................. 11

Fed. R. Civ. P. 9(b) ..................................................................................... 6

Fed. R. Evid. 201 ......................................................................................... 3

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

SLC_4362777

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION.

This case illustrates why the subjective expectations of a consumer are not actionable. Defendant Mophie Inc. ("Mophie") manufactures battery cases for mobile phones. These devices attach to a mobile phone to augment the phone's built-in battery, extending the time between charges. On the packaging, Mophie prominently displays estimates of the "output" (the amount of additional hours that a consumer can expect from each product under various usage scenarios—*i.e.*, talk time, web browsing time, video playback time, and music playback time) and the "capacity" (the electrical capacity of the battery found inside the device, which is measured in "milliamp hours" or "mAh"). The output varies markedly depending on the usage scenarios employed by each user, as well as the type of phone used.

Plaintiffs Michael Young ("Young") and Dan Dolar ("Dolar") separately bought different Mophie battery cases for their different phones. For Young's Samsung Galaxy Note 8 ("SGN8") phone case, the Mophie packaging stated the output as 36 hours talk time, 23 hours web browsing time, 26 hours video playback time, or 121 hours music playback time. For Dolar's Google Pixel XL ("GPXL") phone case, the packaging stated the output as 50 hours talk time, 22 hours web browsing time, 17 hours video playback time, or 76 hours music playback time. These hours are not uniform because each underlying phone is different and each user will use the phone in different ways. Yet, the capacity for both devices was 2,950 mAh.

It is undisputed that both products worked as stated on Mophie's packaging. Neither Plaintiff complains that his device failed to supply the represented hours of extended usage. Plaintiffs instead say they were "disappointed" that the amount of "charge" these two different products deliver did not live up to what they "expected." (FAC ¶¶12 & 16.) Plaintiffs admit Mophie accurately states the extended hour usage and battery capacity, but they merely claim that the packaging was nevertheless misleading because not all the electricity in the batteries can be used to charge their

-1-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

phones. (FAC ¶ 23-25.)

Under long standing precedent, such claims fail. Plaintiffs' mere disappointment with the capacity rating, untethered to any real-world harm, such as actual deficiency in the hours of charge, is not actionable for several reasons. Making matters worse, Plaintiffs' subjective disappointment cannot provide the basis for the sweeping nationwide and multi-state class claims they attempt to bring.

The FAC should be dismissed because this Court lacks subject-matter jurisdiction under both Article III and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Neither Plaintiff has standing to assert his claims.  They have no injury-in-fact or calculable damage.  Both Plaintiffs benefited from the products they purchased, and do not allege Mophie products failed to perform up to the stated hours estimate.  Even worse, Plaintiffs kept the products; they did not return them.

Even if Plaintiffs had standing, they still fail to meet CAFA's $5 million minimum controversy requirement. Mophie's gross revenue on the devices purchased by Plaintiffs is far less than $5 million, and there is simply no inflated computation that would raise the amount in controversy to the jurisdictional threshold.

The FAC should also be dismissed because Plaintiffs do not allege any factual basis for any untruthful statement. Their claims cannot survive Rule 12(b)(6) scrutiny because they ignore the fact that Mophie gives truthful estimates for the actual <u>hours</u> of usage that the consumer can expect as output under different scenarios—a metric far more meaningful to the reasonable consumer than the technical mAh rating of the battery's capacity. A reasonable consumer cannot rely on the mAh rating alone because the output varies so drastically by product and would not ignore the listed time estimates when making a purchasing decision.

For these reasons and the others below, Plaintiffs' claims should be dismissed.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

SLC_4362777

## II.   BACKGROUND FACTS.

Mophie manufactures and sells, among other things, portable power chargers for personal electronic devices. (FAC ¶ 3.) These include portable chargers for various mobile phones, branded as "Juice Packs". Each Juice Pack is engineered to work with one unique phone, increasing the duration of that particular phone's use before it needs to be plugged in for charging. (*Id.* ¶ 4, 22.) For each product, Mophie provides estimates of the increased usage duration, measured in hours, that the specific Juice Pack-assisted phone might provide. (Declaration of Taylor Smith, ¶ 4.) Mophie also states the rating of the Juice Pack batteries in mAh. (*Id.*) The estimated hours of use is displayed prominently on Mophie's packaging, as this information is what is most useful to the typical consumer. (*Id.*)

Young alleges that he purchased a Juice Pack for his SGN8. (FAC ¶ 10.) Dolar alleges that he purchased a Juice Pack for his GPXL. (*Id.* ¶ 14.) On the packaging of Young's Juice Pack for the SGN8 it states:



(Smith Decl., ¶ 4, Ex. A thereto.) And on the packaging of Dolar's Juice Pack for the GPXL it states:



(*Id.*)[1] The packaging of these two Juice Packs also states:

---

[1] The court can take judicial notice of the packaging pursuant to Fed. R. Evid. 201. *Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *2 (C.D. Cal. Sept. 20, 2017).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

IN THE BOX:
2,950 mAh
battery case.
Phone not
Included.

(*Id.*)[2]  The hours of output are markedly different for each device, despite the *same* Juice Pack battery capacity. This is because the underlying phones are different and because each consumer can be expected to use the device in different ways. (*Id.* ¶ 5.) Neither Plaintiff asserts that the products fail to meet the stated output. (*See, generally*, FAC.)

Plaintiffs instead allege that they were "disappointed" to find that the Juice Packs they purchased did not keep their phones charged for as long as they "expected" based on the identified *capacity*. (*Id.* ¶¶ 12, 16.) But the FAC omits any allegation of Plaintiffs' actual expectations based on this capacity, how they came to those expectations, or how the products failed to meet them. Plaintiffs also fail to explain how their capacity expectations in any way relate to the products' output, since the extended battery time varies greatly on usage and cell phone even though the capacity is the same.

Plaintiffs make only the bald assertion that the 2,950 mAh statement is misleading because it is not feasible to extract all of the capacity from the device. (*Id.* ¶¶ 26, 27.) To support this, Plaintiffs complain vaguely that "testing has shown that Defendant has systematically and routinely substantially inflated the Products' mAh ratings." (*Id.* ¶ 23.) Yet Plaintiffs do not disclose their test results, the products tested, or the conditions. (*Id.*) Indeed, Plaintiffs' testing appears to confirm that Mophie accurately states that capacity. Plaintiffs complain only that as a technical matter the measured electrical output will be less the battery's rated capacity because, "[b]y necessity, the conversion process reduces the amount of available power." (*Id.* ¶ 24.)

---

[2] The estimated hours of talk time, web browsing, video playback, and music playback are displayed on the back of these Juice Packs' packaging, and the 2,950 mAh statement is in small print on the side. (Smith Decl., Ex. A.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

SLC_4362777

## III.   LEGAL STANDARD.

Mophie presents here both a facial and factual attack under Rule 12(b)(1). In its facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *Id.* at 362. In the factual attack, Mophie will dispute the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court may review evidence beyond the complaint without converting the motion to dismiss into one for summary judgment. *Id.* at 1039. To defeat Mophie's factual challenge to the Court's jurisdiction based on the proffered declarations, Plaintiffs must present affidavits or other evidence necessary to satisfy their burden to establish that the court, in fact, possesses subject matter jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Mophie also seeks a dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Under Rule 12(b)(6), Courts must consider the complaint in its entirety, "accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party." *Skilstaf Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). But, "[d]ismissal is appropriate if the plaintiff has not allege[d] enough facts to state a claim to relief that is plausible on its face." *Turner v. City & Cty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015) (internal quotation omitted). Further, dismissal under Rule 12(b)(6) is also appropriate if plaintiffs "lack . . . a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotation omitted).

When evaluating a Rule 12(b)(6) motion, a court cannot accept "threadbare

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

SLC_4362777

recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court also does not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The Court, for example, need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "A claim grounded in fraud must be pleaded with the particularity required by Federal Rule of Civil Procedure 9(b)." *Espineli v. Toyota Motor Sales, U.S.A., Inc.*, No. 217CV00698KJMCKD, 2019 WL 2249605, at *2 (E.D. Cal. May 24, 2019). "The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standard applies to claims of fraud under the CLRA and UCL." *Id.* (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). "This particularity requirement also applies to claims based on nondisclosure." *Id.* In the present case, because Plaintiffs' claims sound in fraud, they must set forth "the who, what, when, where, and how" of the alleged fraudulent conduct, and "must set forth what is false or misleading about a statement, and why it is false." *Id.* (internal quotation marks and citations omitted).

Finally, Rule 12(f) permits the court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of Rule 12(f) is to 'avoid the expenditure of time and money that must arise form litigating spurious issues by dispensing with those issues prior to trial.'" *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *1 (C.D. Cal. Dec. 21, 2016) (quoting *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010)). "Striking class allegations prior to a formal certification motion is generally disfavored due to the lack of a developed factual record." *Id.* "The Court may strike

-6-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

class allegations, however, when no class action can possibly be maintained on the face of the pleading." *Id.* (citing cases).

## IV. THE FAC SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

### A. This Court Lacks Article III Jurisdiction Because Plaintiffs Have No Cognizable Injury.

Standing is an essential component of Article III. *Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006). To demonstrate standing, a plaintiff must plausibly plead facts to establish the following three elements: "(1) that he 'suffered an injury in fact,' (2) that there is a 'causal connection between the injury and the conduct complained of,' and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Dutta v. State Farm Mutual Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Injury-in-fact is "the 'first and foremost' of standing's three elements," and to plead it, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) (citation omitted).

The FAC fails to identify any injury in fact to satisfy the first standing element. Plaintiffs have suffered no harm whatsoever. As this Court has found, "the fact that the design does not allow for easy extraction of 100 percent of the product does not point to 'misleading' conduct on the part of the Defendant . . . ." *Ebner v. Fresh Inc.*, No. SACV 13-00477 JVS, 2013 WL 9760035, at *7-8 (C.D. Cal. Sept. 11, 2013) (Selna, J.), *aff'd*, 838 F.3d 958 (9th Cir. 2016). In this case, the devices Plaintiffs purchased performed exactly as Mophie said they would. For the SGN8, the product packaging states expected battery life of 36 hours of talk time, 23 hours of web browsing, 26 hours of video playback, and 121 hours of music playback. (*See* Smith Decl., Ex. A.) The packaging for the GPXL states 50 hours of talk time, 22 hours of web browsing, 17 hours of video playback, and 79 hours of music playback. *Id.* The

-7-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

FAC is devoid of any allegation that Plaintiffs failed to receive these hours of output. Instead, the FAC conflates "capacity" with "output" without any tie to real-world harm.

The capacity of 2,950 mAh is immaterial when the devices' estimated outputs in hours is accurate. For example, no consumer at a Best Buy who sees the 2,950 mAh on a SGN8 Juice Pack could derive from this the usage times he or she will get from the device; usage time depends upon many variables such as how the device is used, which is unique to each consumer, as well as other factors. "[A]s explained by this court by reference to toothpaste, peanut butter, shampoo, and many other products, the general consumer is generally aware that she may not be able to extract every bit of a product from its packaging." *Hawkins v. UGI Corp.*, No. CV1408461DDPJCX, 2016 WL 2595990, at *3 (C.D. Cal. May 4, 2016).

Moreover, the conversion losses that Plaintiffs complain about are apparently well-known and understood in the industry, as conceded by Plaintiffs themselves. (*See* FAC ¶ 24.) A consumer would not understand "capacity" in mAh ratings, and would instead base a purchasing decision on the estimated hourly performance output statements in the product packaging. And a consumer could not have gotten a different product that handled capacity differently because Mophie's competitors are doing it the same way.[3] Plaintiffs' failure to connect their subjective expectations to the 2,950 mAh on the packaging is particularly jarring because Plaintiffs allege they conducted "testing" on unspecified Mophie's products. (FAC ¶ 23.) But nowhere do Plaintiffs disclose what specific devices were tested, or if they even tested the SGN8 and GPXL Juice Packs, what was being tested, how the tests were conducted, the results of the tests, or what the real-world implications of the results would be. (*Id.*) This fails to

---

[3] Plaintiffs' attorneys have filed at least five similar cases. *See Mahavongtrakul v. Inland Prods.* (Case No. 18-cv-7261, N.D. CA); *Hester v. Walmart* (Case No. 18-cv-05225-TLB, W.D. Ar.)*; Brady v. Anker Innovs.* (Case No. 18-cv-11396, S.D.N.Y.); *Mancuso v. RFA Brands* (Case No. 18-cv-6807, W. D. NY.); *Mazzone v. Topstar Tech.* (Case No. 18-cv-6989, N. D. CA.).

-8-

1    satisfy the plausibility requirements of *Twombly/Iqbal*.

2        Since Plaintiffs did not allege that they "received a product that failed to work

3    for its intended purpose or was worth objectively less than what one could reasonably

4    expect," they have, as a matter of law, not suffered injury. *Koronthaly v. L'Oreal*

5    *USA, Inc.*, 374 F.App'x 257, 259 (3d Cir. 2010) (no injury in fact where plaintiff

6    "asserted only a subjective allegation that the trace amounts of lead in the lipsticks

7    are unacceptable to her"); *see also Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 298

8    (4th Cir. 1989) (no injury in fact where plaintiffs alleged only a diminution in value

9    and no defect); *Young v. Johnson & Johnson*, 2012 WL 1372286, at *4 (D.N.J. Apr.

10   19, 2012) (no injury in fact where only allegations were in regards to plaintiff's "own

11   subjective belief" as to the product's performance); *Medley v. Johnson & Johnson*,

12   2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011) (no injury in fact where shampoo

13   "worked as intended," even if plaintiffs would not have purchased the product had

14   they "known [its] true nature").

15       Courts have already found that Article III's injury in fact requirement is not

16   satisfied by consumer disappointment like Plaintiffs. In *Eike v. Allergan, Inc.*,

17   850 F.3d 315, 318 (7th Cir. 2017), the Seventh Circuit confirmed that "regret or

18   disappointment" is insufficient to allege an injury for Article III purposes. A plaintiff

19   "cannot sue a company and argue only 'it could do better by us,'" but must instead

20   plead "that [he] has been injured in some way (physically, financially—whatever) by

21   the defendant. That's what's required for standing." *Id.* "The fact that a seller does

22   not sell the product that you want, or at the price you'd like to pay, is not an actionable

23   injury; it is just a regret or disappointment—which is all we have here . . . ." *Id.*

24       Plaintiffs' claims are also flawed because they are purely speculative. The FAC

25   lacks any facts supporting the assertion that Mophie's products were more expensive

26   solely because of the alleged representation as to 2,950 mAh. Indeed, Plaintiffs fail to

27   allege the price they paid, how it compares to other manufacturers' products, and

28   whether these other products have been tested, to compare their stated and actual

-9-

capacities and the prices paid. In *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1364 (D.C. Cir. 2012), the D.C. Circuit dismissed consumer claims on Article III standing grounds because the plaintiff's alleged injury was too speculative. In this case, as in *Dominguez*, there is no reason to think that a change in the mAh capacity of the product would result in any change in how the product is received in the marketplace. *Id.* ("speculation atop speculation" about how "any secondary market would have led to a lower price" is insufficient to establish Article III standing). And if, as Plaintiffs' counsel has alleged in other cases, basically the entire industry is misleadingly stating the batteries' capacity, there is nowhere for Plaintiffs to buy a more accurately identified and priced product.  Without any concrete injury, there is no standing.

Even assuming an injury, Plaintiffs fail to meet the traceability requirement by identifying a causal connection between the alleged injury and the conduct complained of. Plaintiffs merely allege that the purchased product did not keep their phones charged for as long as they expected. But as stated above, Plaintiffs cannot tie their subjective expectations to Mophie's packaging. Not only is there a missing step between the capacity and output, but there is no allegation about what tasks Young and Dolar had running on their respective phones (SGN8 and GPXL, respectively) that may have caused them to charge more frequently. Of course, Plaintiffs also fail to state that they could not return the products. Mophie cannot be the cause of Plaintiffs' subjective disappointment if Plaintiffs willfully kept the products rather than get their money back.

Finally, the allegations fail because there is nothing to be redressed by a favorable decision. The Court cannot redress subjective disappointment. Because Plaintiffs fail to allege any injury, their allegations cannot establish redressability. *See Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006). For these reasons, Plaintiffs lack Article III standing, and their claims must be dismissed.

SLC_4362777

**B.   This Court Lacks CAFA Jurisdiction Because There is No Allegation that the Class Size Exceeds 100 Members and the Amount in Controversy is Far Less Than $5 Million.**

The Court "must" dismiss the case if it determines "at any time" that it does not have subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012). Plaintiffs allege that the Court can exercise subject-matter jurisdiction in this matter under CAFA. (FAC ¶ 8.) But Plaintiffs, as the party seeking to invoke CAFA jurisdiction, must prove by a preponderance of the evidence that (1) at least one member of the putative class is a citizen of a different state than Mophie; (2) the class size exceeds 100 members; and (3) the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) (recognizing that under CAFA, the burden of establishing federal subject-matter jurisdiction remains with the proponent of jurisdiction); *Tosco Corp v. Cmtys. for Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (U.S. 2010). Plaintiffs cannot satisfy their burden.

(Also, where individual standing is conceded, the court may reserve until the class certification stage to rule on whether named plaintiffs have standing to assert claims based on products they did not purchase.  *See Grimm v. APN Inc.*, 2017 WL 6398148, at *3-4 (C.D. Cal. Aug. 31, 2017); *Stotz v. Mophie Inc.*, 2017 WL 1106104, at *5-6 (C.D. Cal. Feb. 27, 2017); *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015).  In this case, however, Plaintiffs lack standing to bring their own individual claims, and therefore should not be allowed to use Mophie products they did not purchase to satisfy the amount in controversy under CAFA, especially where they have failed to allege that labeling on unpurchased Mophie products are "sufficiently similar" to the two Juice Packs that were purchased. *See Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *8-9 (N.D. Cal. Mar. 13, 2014) ("[A] claim that a reasonable consumer would be misled by a representation on a label may well require

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

-11-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

a context specific analysis of the appearance of the label, the misrepresentations' placement on the label, and other information contained on the label.  In those circumstances, a consumer may only be allowed to pursue those claims for products with identical labels.").  In fact, Plaintiffs fail to even identify other specific Mophie products that would be part of the analysis or which Mophie products they allegedly "tested." (*See* FAC P 23.) Plaintiffs' conclusory allegations in this regard do not satisfy *Twombly/Iqbal*. *Iqbal*, 556 U.S. at 678.)

First, Plaintiffs cannot meet the CAFA amount in controversy threshold, which requires Plaintiffs to show by a preponderance of the evidence that the aggregated amount in controversy at the time the complaint was filed exceeded $5 million. *See Rodriguez*, 728 F.3d at 981. Even if Plaintiffs were able to show *any* damages, which they cannot, Plaintiffs have certainly failed to state a claim for damages of anywhere close to $5 million. Indeed, the complaint is devoid of anything other than the bare legal conclusion that the amount in controversy is at least $5 million. Plaintiffs do not even identify a damages model, let alone one that could get them close.  In fact, just as a benchmark, Mophie's entire combined *gross revenue* to date on the products at issue (the Juice Pack for the SGN8 and GPXL), is far below $5 million. The combined total gross revenue as of May 2019[4] for both products is approximately $2,996,469; well below the jurisdictional requirement. (Smith Decl., ¶ 6, Ex. B thereto.) Any compensatory damages or restitution awarded would be far less than that figure because Plaintiffs are not entitled to recover the total revenue amount, especially where they retained the products and benefitted from them. *See Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *19 (N.D. Cal. June 13, 2014) (recognizing that the "[r]eturn of the full retail or wholesale prices is not a proper measure of restitution, as it fails to take into account the value class members received by purchasing the products" and noting that the proper measure of restitution is the "difference between

---

[4] The total gross revenue does not account for things such as product returns.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

SLC_4362777

what the plaintiff paid and the value of what the plaintiff received"); *Lanovaz v. Twinings N.A., Inc.*, 2014 WL 1652338, at *6 (N.D. Cal. Apr. 24, 2014) ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received."); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F.Supp.3d 1050, 1118 (C.D. Cal. 2015) (same). Thus, any monetary recovery by Plaintiffs would be far less than Mophie's overall revenue and must subtract the value of the product that Plaintiffs actually received. There is simply no way for Plaintiffs to get above the threshold.

Second, this Court also lacks subject matter jurisdiction because Plaintiffs fail to allege that the proposed classes are not less than 100 members, as required by 28 U.S.C. § 1332(d)(5)(B). Without this critical allegation, the Court lacks jurisdiction.

**C.    Plaintiffs' Allegations Are Insufficient to Assert a Tenable Class Because the Class Representatives Have No Standing to Make Claims under Multiple Other States Where They Do Not Reside and Suffered No Injury.**

Plaintiffs also lack standing because their allegations do not support a tenable class. Young and Dolar, the only named plaintiffs, do not have standing to assert the laws of other states, or to represent a "Multi-State Class." It is well established that "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642, 657-58 (E.D. Mich. 2011) (collecting cases from various federal jurisdictions including California, New York, Florida, Pennsylvania, Michigan and Washington, and dismissing claims for 26 states where plaintiffs did not reside). The FAC alleges that Young is a Florida resident (FAC ¶ 10), and Dolar is a California resident (FAC ¶ 14), but fails to include any facts as to where the products were purchased. The FAC does not include any allegations that Young or Dolar (or anyone else) reside in any other states or suffered injury in any other state.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

SLC_4362777

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

The claims asserted under the laws of other states must therefore be dismissed. *In re Checking Account Overdraft Antitrust Litig.*, 694 F.Supp.2d 1302, 1324-1325 (S.D. Fla. 2010) (holding that "there must be a named plaintiff with constitutional standing to assert each particular claim," and that therefore "Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state."); *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1026-1027 (N.D. Cal 2007) (holding that no named plaintiff has standing to bring antitrust claims in those states where no plaintiff resides); *see also McGuire v. BMW of N. Am., LLC,* 2014 WL 2566132, *6 (D.N.J. June 6, 2014) ("Named plaintiffs lack standing to assert claims under the law of the states in which they do not reside or in which they suffered no injury."); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F.Supp.2d 1365, 1371 (S.D. Fla. 2001) ("[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."); *Cornelius v. Fidelity Nat'l Title Co.*, 2009 WL 596585, at *9 (W.D. Wash. Mar. 9, 2009) (holding that plaintiffs who do not allege that they suffered the invasion of a legally protected interest under the laws of any state other than Washington did not have standing to represent unnamed out-of-state plaintiffs: "The 'out of state [Consumer Protection Act]' claims of this Complaint do little more than name the preserve on which Plaintiffs intend to hunt."); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, 2014 WL 4774611, at *4 (N.D. Cal. Sept. 22, 2014) (holding that "dismissal is appropriate with respect to claims asserted under the laws of states in which no Plaintiff resides or has purchased products").

Further, there is no causal connection between Mophie's alleged violation of the statutes of states other than Florida and California, and Young's and Dolar's alleged injury in fact. For example, Mophie's alleged violation of the Alaska Unfair Trade Practices and Consumer Act is not the cause of Young's (a Florida resident) or Dolar's (a California resident) alleged harm. Young and Dolar therefore do not have standing to assert that claim or represent a "Multi-State Class" or a "Nationwide"

-14-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

1  class as their alleged harm is limited to the supposed violations of their respective

2  state laws.[5] *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012)

3  (recognizing that "[c]onsumer protection laws are a creature of the state in which they

4  are fashioned" and finding material differences in the various states' laws).

5      Young and Dolar also do not have standing to seek injunctive relief on behalf

6  of any purported class. The FAC does not allege a sufficient probability of future harm

7  to Young and Dolar such that, under current conditions, they would purchase another

8  Power Bank from Mophie (*see* FAC ¶¶ 13, 17). It is well-established that injunctive

9  relief is only available "if the plaintiff can show an irreparable injury—*i.e.*, a real or

10  immediate threat that the plaintiff will be wronged again." *Gonzalez v. Costco*

11  *Wholesale Corp.*, No. 16-cv-2590-NGG-JO, 2018 WL 4783962, at *5 (E.D.N.Y.

12  Sept. 29, 2018) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 96, 111 (1983)).

13  Without sufficiently alleging an irreparable injury, Plaintiffs cannot seek injunctive

14  relief on behalf of any proposed class. *Doe v. Match.com*, 789 F. Supp. 2d 1197, 1201

15  (C.D. Cal. 2011) (finding that plaintiff did not have standing to assert her claim for

16  injunctive relief where she did not allege that she would use dating site again) (citing

17  *Lyons*, 461 U.S. at 102).

18      Paragraphs 13 and 17 of the FAC allege that Young and Dolar "would consider

19  purchasing the Power Bank again if [they] could trust that the Defendant's

20  representations about its mAh rating were correct going forward, such as if the Power

21  Bank were redesigned to make the Defendant's representations about it correct, or if

22  the Power Banks label and advertising depicted the Power Banks' mAh and it was

23  priced accordingly." These "speculative contingencies" do not satisfy the burden for

24  seeking injunctive relief on behalf of an unnamed class. Courts have repeatedly held

25  that such allegations are insufficient to establish the future injury requirement for

26  standing. *See, e.g., Atik v. Welch Foods, Inc.*, No. 15-CV-5405(MKB) (VMS), 2016

27

28  _____

[5] The Magnuson-Moss Warranty Act claim also does not save these proposed classes because the court does not have jurisdiction to hear that claim, as explained below.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

-15-

SLC_4362777

WL 5678474, at *6 (E.D.N.Y. Sept. 30, 2016) (finding allegations that plaintiffs would purchase challenged products again if the labels were "truthful and non-deceptive" insufficient to establish future injury); *Buonasera v. Honest Co., Inc.*, 208 F.Supp.3d 555, 564-65 (S.D.N.Y. 2016) (holding that plaintiff's allegation was insufficient to allege future injury where plaintiff's complaint stated that "[i]f Honest's products were reformulated such that its representations were truthful, Plaintiff would consider purchasing Honest's products in the future."); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 157 (E.D.N.Y. 2015), *aff'd in part, vacated in part, remanded* 834 F.3d 220 (2d Cir. 2016) (holding that plaintiff "lacks standing to seek injunctive relief if his injury is not ongoing and he faces no threat of future injury.").

## V.  THE FAC FAILS TO STATE ACTIONABLE CLAIMS.

### A.  Counts I, II and III Fail to State a Claim under the CLRA, FAL and UCL.

In Count I, Plaintiffs allege breaches of the California Consumer Legal Remedies Act ("CLRA") under California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9). In Count II, Plaintiffs allege breaches of California's False Advertising Law ("FAL") under California Business & Prof Code § 17500, *et seq.*, due to purported false and misleading advertising misrepresentations and non-disclosures of material facts. In Count III, Plaintiffs allege breaches of California's violations of California Business & Professional Code §§ 17200-17210, by engaging in "unlawful, fraudulent, and unfair conduct" due to violating the CLRA and FAL.

The UCL, FAL and CLRA are California consumer protection statutes.[6] The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice."

---

[6] To have standing under these statutes, "[t]here must be a nexus between the alleged unfair competition [i.e., misrepresentation] and a plaintiff's alleged injury." *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 644 (C.D. Cal. 2014). Plaintiffs here have not plausibly pled a nexus between the 2,950 mAh statement and their alleged harm and therefore do not have standing under UCL, FAL, and CLRA. *Id.*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

SLC_4362777

Cal. B&P Code § 17200. The FAL makes it unlawful to make or disseminate any statement concerning property or services that is "untrue or misleading." *Id.* § 17500. The CLRA likewise prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.

Claims made under these statutes are governed by the "reasonable consumer" test which focuses on whether "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). Although the question of whether a business practice is deceptive "generally presents a question of fact not suited for resolution on a motion to dismiss," courts recognize that "in certain instances, the court may be in a position to consider the viability of the alleged consumer law claims based on its review of the product packaging." *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (citing *Brockey v. Moore*, 107 Cal.App.4th 86, 100, 131, 131 Cal.Rptr.2d 746 (2003) ("the primary evidence in a false advertising case is the advertising itself")). Thus, "where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Id.* (citing *Sugawara v. Pepsico, Inc.*, No. 208CV01335-MCEJFM, 2009 WL 1439115, at *3–4 (E.D. Cal. May 21, 2009) (finding that the packaging for Cap'n Crunch cereal and its use the term "Crunch Berries" was not misleading, as a matter of law); *Videtto v. Kellogg USA*, 2009 WL 1439086 at *2 (E.D.Cal., May 21, 2009) (dismissing UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that "Froot Loops" cereal contained "real, nutritious fruit"); *McKinnis v. Kellogg USA*, 2007 WL 4766060 at *3–4 (C.D. Cal., May 21, 2007) (same).

These claims are subject to dismissal because, as explained above, Mophie has not made any misrepresentation that would be misleading to a reasonable consumer. In *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013), the court dismissed the plaintiff's complaint because she failed to allege how, in the context of

-17-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

SLC_4362777

the disclosures on the packaging for pasta, the term "All Natural" could be deceptive to a consumer acting reasonably under the circumstances. The plaintiff claimed that use of the term "All Natural" to describe the pasta misleading because the pasta contained at least two synthetic ingredients. *Id.* at 975-76. The court found that the term "All Natural" appeared "on the back of the package . . . immediately above the list of ingredients." *Id.* "Therefore, to the extent there is any ambiguity regarding the definition of 'All Natural' with respect to each of the [pastas], it is clarified by the detailed information contained in the ingredient list." *Id.*

Mophie's packaging states that "in the box" is a "2,950 mAh battery case." (Smith Decl., Ex. A.) Even if the battery's capacity were less than 2,950 mAh, the statement would not be deceptive to a consumer acting reasonably under the circumstances because the reasonable consumer would see that any ambiguity in the capacity of the Juice Pack's battery capacity is clarified by the estimated hours of use that appear prominently on the packaging. (*See* Smith Decl., Ex. A.) Indeed, a consumer purchases a Juice Pack for the purpose of extending the battery life in the consumer's phone in order to increase the duration of use, and Mophie provides ratings for the increased hours the Juice Pack might provide. Thus, like the ingredient list contained on the pasta packaging in *Pelayo* that clarified the statement "All Natural," the estimated hours of extended battery life identified on Mophie's packaging is "detailed information" that clarifies the 2,950 mAh statement. 989 F. Supp. 2d at 980. A reasonable consumer, therefore, would not be misled or deceived by Mophie's packaging as to the benefit conferred by a Juice Pack with a 2,950 mAh rated battery.

Also, Young's CLRA claim fails because he did not give the statutory notice required by CLRA § 1782. (FAC ¶ 52.)

### B. Count IV Fails to State a Claim under the Florida Deceptive and Unfair Trade Practices Act.

Plaintiffs fail to state a claim under the Florida Deceptive and Unfair Trade

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

SLC_4362777

Practices Act ("FDUTPA"). The FDUTPA was "enacted to protect the public and businesses from unfair trade practices." *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So.3d 207, 209-10 (Fla. Ct. App. 2019) (citing Fla. Stat. § 501.202(2)). It prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . . F.S.A. § 501.204(1). "An unfair practice 'offends established public policy' and is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Stewart Agency, Inc.*, 266 So.3d at 210 (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)). "A deceptive practice is one 'likely to mislead consumers acting reasonably in the circumstances, to the consumers' detriment.'" *Angelo v. Parker*, ---So.3d---, 2019 WL 2528922, at *2 (Fla. Ct. App. June 20, 2019) (citation omitted). "A plaintiff must show that a reasonably objective person in the same circumstances would have been deceived." *Id.*

The labeling on Mophie's Juice Packs is not immoral, unethical, oppressive, unscrupulous or substantially injurious as a matter of law. Rather than leave consumers to wonder at the practical benefit of a 2,950 mAh battery, Mophie provides estimated hours of use on the packaging. (Smith Decl., Ex. A.) And because the estimated hours provide additional context to the statement that the Juice Pack contains a 2,950 mAh battery, the labeling is not likely to mislead consumers acting reasonably under the circumstances. Plaintiffs have not alleged a plausible claim under the FDUTPA because a reasonably objective person would not have been deceived by the battery capacity rating given the hourly use estimates contained on the packaging. Indeed, a reasonable consumer would likely have no idea what benefit a 2,950 mAh battery would provide, nor would a reasonable consumer be able to translate a mAh rating into an estimate of hourly usage.

Additionally, there is no allegation of causation between the harm claimed by Plaintiffs and the 2,950 mAh capacity stated on the Juice Pack packaging. *See Baptist Hosp., Inc. v. Baker*, 84 So.3d 1200, 1204 (Fla. Ct. App. 2012) (identifying causation

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

-19-

SLC_4362777

as an element under the FDUTPA). Young alleges that he was "disappointed" that he was "forced to recharge his Mophie more often than he expected," (FAC ¶ 12), but he does not allege that his expectation was rooted in the 2,950 mAh battery rating stated on the packaging. There is also no basis for Plaintiffs to bring this claim on behalf of a purported "Nationwide Class" because there is no causal connection between Mophie's alleged violation of the FDUTPA and the alleged harm of any putative class member not residing in Florida. *Dutta*, 895 F.3d at 1173.

C.   **Count V Fails to State a Claim under the State Consumer Protection Statutes.**

As stated above, Plaintiffs lack standing to represent a "Multi-State Class" because Mophie's alleged violation of these other statutes did not cause the alleged harm of potential plaintiffs located in the various states. Moreover, the independent state statutes identified in Count V are materially different in important ways, including statute of limitations, *c.f.* Alaska Stat. 45.50531, 10 Del. C. § 8106, Fla. Stat. 95.11(f), procedures relating to bringing a claim, *c.f.* Conn. Gen. Ann. 42-110g(c), 5 Me. Rev. Stat. 213(1-A), 6 Del. C. § 2525, and procedures relating to class actions, *see* Hawaii Stat. 480-13.3. Count V should therefore be dismissed. *See Mazza*, 666 F.3d at 591.

D.   **Count VI Fails to State a Claim under the Magnusson-Moss Warranty Act.**

Plaintiffs allege that Defendant breached express "written warranties" under the Magnuson-Moss Warranty Act ("MMWA"). As an initial matter, the court has no jurisdiction to hear the MMWA claim because Plaintiffs cannot meet the amount in controversy requirements. The MMWA requires that the amount in controversy for any individual claim be at least $25, and that the sum of all claims must be at least $50,000. 15 U.S.C. § 2310(d)(3). Young and Dolar are the only named Plaintiffs, and neither alleges individual damages of $25 or more. Without the jurisdictional prerequisites required by MMWA, the Court does not have jurisdiction over the claim, and even if the Court had CAFA jurisdiction (which it does not), there still is no

-20-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

SLC_4362777

jurisdiction over the MMWA claim. *See MacDougall v. Am. Honda Motor Co.*, Case No. SACV 17-01079 AG, 2017 WL 8236359, at *4 (C.D. Cal. Dec. 4, 2017) (rejecting CAFA as a basis for jurisdiction over a MMWA claim).

Further, Plaintiffs' allegations do not state a claim under the MMWA. A "written warranty" is defined in the MMWA as, *inter alia*, "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). "Courts have generally held that '[a] product description does not constitute a written warranty under the MMWA.'" *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176, 1183 (N.D. Cal. 2016) (citation omitted). Further, "statements merely describing the materials contained in a product are not considered written warranties under the MMWA, [because] such statements do not guarantee performance or lack of defects." *Id.* (citation omitted). The 2,950 mAh battery statement contained on Mophie's packaging is a product description, not a written warranty for performance over a specified period of time.

**E.    Count VII Fails to State a Claim for Breach of Express Warranty.**

The FAC is devoid of any reference indicating which state's express warranty laws Plaintiffs rely upon for their express warranty claim, and the Court should dismiss Plaintiff's the claim on this basis. Moreover, as shown below, even if the Court were to determine that California or Florida law applied, the claim would fail under the laws of either jurisdiction. Under California law, "[t]he plaintiff must allege the exact terms of the warranty," and "[g]eneral assertions about representations or impressions given by [the defendant] . . . are not equivalent to a recitation of the exact terms of the underlying warranty." *Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *6-7 (C.D. Cal. Sept. 20, 2017) (internal quotation marks and citation omitted). Under Florida law, a plaintiff claiming breach of warranty must demonstrate

-21-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

SLC_4362777

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

that "a promise was made by the seller to the buyer which related to the goods and became part of the bargain . . . . [and that] the goods were unfit for the ordinary purpose for which such goods are used." *State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami*, 557 So.2d 107, 108-09 (Fla. Ct. App. 1990).

The allegations do not support a plausible claim that Mophie made an express warranty. Nowhere in the product packaging does it represent that the purchaser can obtain an output of 2,950 mAh. (Smith Decl., Ex. A.) Plaintiffs' failure to identify the exact terms of the purported warranty is fatal. *See Chuang*, 2017 WL 4286577, at *7 (concluding that "[b]ecause Plaintiff fails to point to the terms of the warranty, he fails to state a claim for breach of express warranty"); *Nu Prime*, 557 So.2d at 108 (must show "a promise" that became part of the basis for the bargain). Absent any express terms of a warranty, Plaintiffs' subjective expectations cannot form the basis for liability, where Plaintiffs fail to identify the basis for their expectations. And product specifications "available on the packaging" do not constitute an express warranty. *See Baltazar v. Apple, Inc.*, 2011 WL 588209, at *1-2 (N.D. Cal. Feb. 10, 2011) (rejecting express warranty claim where plaintiffs "recite[d] the specific language of the product specifications").

## F.   Count VIII Fails to State a Claim for Unjust Enrichment.

Plaintiffs fail to state a claim for unjust enrichment for several reasons. First, Plaintiffs fail to allege which state law applies. Such a defect by itself requires dismissal of Plaintiffs' claim. *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2013 WL 1431756, at *24 (E.D. Mich. Apr. 9, 2013) (dismissing plaintiffs' complaint, reasoning that "[u]nless the [] Plaintiffs identify which state or states' laws they are asserting an unjust enrichment claim under, the Court cannot determine if they have sufficiently pleaded an unjust enrichment claim under any state's law."); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 667-68 (dismissing plaintiffs' complaint, reasoning that "the [complaint] fails to identify any specific state unjust enrichment law under which the [] Plaintiffs purport to

-22-

SLC_4362777

proceed."). In fact, unjust enrichment laws vary widely. *See id.* at 667-69.

Second, under the unjust enrichment laws of many states, a plaintiff must allege that it conferred a benefit directly on the defendant, as opposed to others in the chain of distribution. *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *25-26 ("because the [] Plaintiffs cannot allege that they conferred a benefit directly on Defendants. Any benefit that the [] Plaintiffs conferred would be on others in the chain of distribution from whom they purchased, not on Defendants. Only the direct purchasers conferred a direct benefit on Defendants by paying Defendants . . ."); *In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010); *Los Gatos Mercantile, Inc.*, 2014 WL 4774611, at *11. Because Plaintiffs do not allege that they purchased the products directly from Mophie, they have failed to plead that they conferred a benefit directly on Mophie, and the claim therefore must fail.

Third, Plaintiffs' claim for unjust enrichment is deficient because they have an adequate remedy at law. Unjust enrichment is an equitable remedy for a contract implied in law, or quasi-contract, and applies only "'to provide a remedy where one party was unjustly enrichment [and] where that party received a benefit under circumstances that made it unjust to retain it without giving compensation.'" *Ocean Commc'ns, Inc. v. Burbeck*, 956 So.2d 1222, 1224 (Fla. Dist. Ct. App. 2007) (citation omitted). Because it is an equitable remedy, unjust enrichment is "not available where there is an adequate legal remedy." *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla 2005).

Plaintiffs' unjust enrichment claim is also duplicative of both their express warranty and consumer protection claims. Unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Buonasera*, 208 F.Supp.3d at 567 (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777 (N.Y. 2012)).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

## VI.   PLAINTIFFS SHOULD BE DENIED THE RELIEF SOUGHT IN THE PRAYER FOR RELIEF.

This Court should dismiss, or strike under Rule 12(f), the following paragraphs from Plaintiffs' Prayer for Relief:

- Paragraph A because, as shown above, Young and Dolar do not properly represent the purported "Multi-State Class" and the purported "Nationwide Class";

- Paragraph B because there is no legal basis to declare that Mophie is financially responsible for notifying purported members of the purported class without a finding of liability on the merits, and Plaintiffs do not identify any such basis. *See Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1143 (9th Cir. 2009);

- Paragraph C because there is no basis to order proper, complete, and accurate labeling of the Power Banks because the labeling is already accurate, as the Court can see from taking judicial notice of the packaging;

- Paragraph E because the packaging is not false, misleading, or otherwise deceptive and there is no basis for liability or punitive damages; and

- Paragraph F because Plaintiffs have not alleged a basis upon which they should receive their attorney's fees.

## VII.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

This Court should not grant the Plaintiffs leave to amend. In cases where product labels at issue revealed that no reasonable consumer could be misled, courts have granted motions to dismiss without leave to amend because amendment would be futile. *See Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015) (dismissing without leave to amend UCL and CLRA claims where the "labels at issue are not deceptive, and the labels themselves cannot be changed by a new complaint");

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

-24-

SLC_4362777

*Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1101 (N.D. Cal. 2017) (dismissing claim under the UCL with prejudice where "label is not misleading as a matter of law"). Leave to amend would be futile here because Mophie's labels are not false or misleading. The capacity of the battery is set forth in the context of the additional hours of use the Juice Pack provides to the consumer. Because no reasonable consumer would be misled in the context of the packaging as a whole, and because Plaintiffs cannot meet the jurisdictional requirements, amendment would be futile, and leave to amend should not be permitted.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' claims with prejudice.

Dated:  July 11, 2019        */s/ David W. Tufts*

DURHAM JONES & PINEGAR, P.C.
David W. Tufts

PAYNE & FEARS LLP
Daniel M. Livingston
Benjamin A. Nix

Attorneys for Defendant Mophie Inc.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

SLC_4362777

# CERTIFICATE OF SERVICE

I declare under penalty of perjury as follows: I am employed in the office of a member of the Bar of this Court at whose direction the service was made. My business address is Durham Jones & Pinegar, P.C., 111 S. Main St., Suite 2400, Salt Lake City, Utah 84111.

On July 11, 2019, I electronically filed the foregoing document with the Clerk of the Court the Clerk of the Court using its CM/ECF System, which electronically provides notification of such filing to all counsel of record in this action.

Executed in Salt Lake City, Utah on July 11, 2019.

*/s/ Kristin Hughes*
Kristin Hughes

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CA 92614
(949) 851-1100

SLC_4362777